UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

ELOF HANSSON USA INC.,

                Plaintiff,

   - against -

EDGAR SANTIAGO (also known as
"Edgar O. Santiago" and "Edgar Oscar Santiago"),
ANGELA SANTIAGO, and BOLIVAR ERNESTO
INFANTE QUINONES,

                Defendants.

----------------------------------------------------------X

Civil Action No.
18-cv-02758-VB-PED

**<u>AMENDED COMPLAINT</u>**

      Plaintiff Elof Hansson USA Inc. ("Plaintiff"), by and through its attorneys, Kucker & Bruh,

LLP, alleges the following as and for its Amended Complaint in this action (for purposes of

simplicity hereinafter referred to as the "Complaint"):

### THE PARTIES

    1.    Elof Hansson USA Inc. is a corporation which was organized pursuant to the laws of

the State of Delaware as "Elof Hansson Paper & Board, Inc." whose name subsequently was changed

to "Elof Hansson USA Inc." in a statutory merger on December 30, 2010 (the "Merger"). The Merger

included, among other persons, Elof Hansson Inc., a corporation which was organized under the laws

of the State of New York. Elof Hansson USA Inc. was the sole surviving person in the Merger, and it

continues to exist as a Delaware corporation.  Elof Hansson Inc. was a non-surviving constituent in

the Merger, and it no longer exists except in the form of its legal successor, Elof Hansson USA Inc.

During all of the relevant times, Elof Hansson USA Inc. has been authorized to do business in New

York. (Hereinafter, Elof Hansson USA Inc. is referred to as "EH USA" or the "Plaintiff".)

    2.    Plaintiff's headquarters, and its principal place of business which is its nerve center

where the corporation's officers direct, control and coordinate the corporation's activities, is located at 303 S. Broadway, Tarrytown, New York 10591. Thus, Plaintiff is a citizen of the State of New York pursuant to 28 U.S.C. § 1332(a). *See Hertz Corp. v. Friend*, 559 U.S. 77, 79 (2010); *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2nd Cir. 2016).

3.     Plaintiff never has been incorporated to do business in New Jersey or any other State except for New York and Delaware, and it never has had a nerve center in New Jersey.

4.     The business conducted by Plaintiff has included selling steel products, lumber and other wood products to persons located in the Caribbean and other locations. Sources for the steel products have included manufacturers located in the People's Republic of China ("China").

5.     Defendant Edgar Santiago, also known as "Edgar O. Santiago" and "Edgar Oscar Santiago" (hereinafter, "Edgar Santiago") is an individual person with his domicile at 113 Ridge Avenue, Park Ridge, New Jersey 07656, and he is a citizen of the State of New Jersey.

6.     Defendant Angela Santiago (hereinafter, "Angela Santiago") is an individual person with her domicile at 113 Ridge Avenue, Park Ridge, New Jersey 07656, and she is a citizen of the State of New Jersey. Defendant Angela Santiago is the spouse of defendant Edgar Santiago, and *vice versa*.

7.     During the relevant times, defendant Edgar Santiago was an employee of Plaintiff. Edgar Santiago was hired by Plaintiff whose nerve center and headquarters are in Westchester County, New York, at 303 South Broadway, Tarrytown, New York 10591 (previously located at 127 West Main Street, Suite B, Tarrytown, New York 10591), and he worked for Plaintiff in its Tarrytown, New York offices and received substantial salary, other remunerations, and employee benefits paid and provided by Plaintiff from its Tarrytown, New York offices.

8.     During the time period from March 4, 2009 to February 2011, defendant Edgar Santiago was an employee of EH USA with the title of business controller, and spent a majority of

his time on accounts receivable and credit insurance workouts.

9.      However, in February 2011, defendant Edgar Santiago was promoted to the positions of Executive Vice President -- EH USA's second highest executive officer position -- and division manager for the Building Materials Division, an unincorporated internal operating unit in EH USA, which includes transactions concerning all grades of timber and steel products utilized in the building industry. Edgar Santiago continued to hold both of those significant executive officer and leadership positions until he resigned his employment by the corporation on June 2, 2017.

10.      The Parties to this action also include defendant Bolivar Ernesto Infante Quinones (hereinafter, sometimes referred to simply as "Bolivar"), an individual person who is a citizen of the Dominican Republic ("DR") who was born in Santo Domingo, DR and his domicile is located in Santo Domingo, DR. On information and belief, Bolivar has a driver's license issued by the DR which affirms that his full name is "Bolivar Ernesto Infante Quinones" and his place of birth was Santo Domingo in 1988 (the particular month is identified) and his nationality is Dominican; and he has a passport issued by the DR which affirms that his full name is "Bolivar Ernesto Infante Quinones" and his place of birth was Santo Domingo in 1988 (the particular month is identified and it is the same month denoted on his driver's license), and his nationality is Dominican, and his DR passport identifies his DR driver's license number, and when he has visited the United States, he has utilized an alien Visa issued by the United States for temporary entry into the United States.

11.      As is discussed in greater detail in subsequent paragraphs of this Complaint, *infra*, defendant Bolivar was a purchasing agent who sourced steel products manufactured in Asia which Plaintiff purchased, directed by its nerve center and headquarters in Tarrytown, New York, for which Bolivar received a purchase commission paid by Plaintiff from its offices in New York. Plaintiff, in its offices in New York, sold to one or more of its customers the steel which Bolivar sourced in Asia, and Plaintiff arranged for delivery of the steel to its customer(s).

12.     Hereinafter, defendant Edgar Santiago, defendant Angela Santiago and defendant Bolivar are collectively referred to as the "Defendants."

## *JURISDICTION AND VENUE*

13.     With respect to <u>subject matter jurisdiction</u>, this District Court is vested with subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) (diversity of citizenship jurisdiction) because, as previously explained (respectively in Complaint paragraphs 2, 5 and 9, *supra*), Plaintiff is a citizen of New York, defendant Edgar Santiago is a citizen of New Jersey, and defendant Bolivar is a citizen of the Dominican Republic. [1] Thus, each Defendant is a citizen of a different State than Plaintiff. As is discussed in greater detail *infra*, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. In addition, federal subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) includes ancillary jurisdiction concerning Plaintiff's state law claims.

14.     With respect to <u>personal jurisdiction</u>, each of the Defendants is subject to this District Court's *in personam* jurisdiction concerning this civil action. Federal law, including Fed. R. Civ. P. Rule 4, directs every federal district court to follow the law concerning *in personam* jurisdiction which is in force in the state courts where the federal District Court is located. Federal courts may utilize state long-arm statutes to reach defendants beyond the territory of their normal jurisdiction.

15.     New York law, more particularly §§ 301 and 302 of the Civil Practice Law and Rules of the State of New York ("CPLR"), provides that there is *in personam* jurisdiction over each of the Defendants because defendant Edgar Santiago has been present in this federal district, and because of each of the Defendants' transacting, doing, and soliciting of business in New York, and because of their committing torts in New York, and because of their committing torts outside New

---

[1]   The provisions in subsection (2) of 28 U.S.C. §1332(a) are not applicable here because Bolivar is not a citizen of a foreign state with a domicile in the State of New York.

York which caused injuries to Plaintiff in New York.

16.   With respect to <u>venue</u>, this District Court is the proper venue pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims against Defendants occurred in this District. Local rules for the United States District Court for the Southern District of New York provide that, because the relevant facts have a nexus with Westchester County, New York, an action such as this which is filed in federal District Court should be filed in the SDNY courthouse in White Plains, New York.

## NATURE OF THE ACTION

17.   Subsequent to defendant Edgar Santiago's resignation of employment by Plaintiff on June 2, 2017, Plaintiff discovered that, while he was an employee, executive officer and division manager of Plaintiff receiving a salary, other remunerations, and employee benefits paid and provided to him by Plaintiff, Edgar Santiago engaged in heinous acts, including (i) the theft of more than $800,000.00 taken from his employer; and (ii) money laundering activities outside and inside the United States. In addition to being *ultra vires* (beyond his power and authority as Executive Vice President or division manager), unauthorized and illegal, these acts and actions were directly adverse to the interests of his employer, Plaintiff, and solely beneficial to Edgar Santiago and his co-conspirator, defendant Bolivar.

18.   With one caveat, Defendants' theft of money from Plaintiff and money laundering activities during calendar years 2015-2017, included the following steps when Bolivar sourced steel products in Asia for a sale by EH USA to one of its customers: [2]

    a.      A purchase commission invoice was fabricated at $5.00, or more, for each

---

[2]  Sometime during calendar year 2016, Edgar Santiago and Bolivar ceased utilizing Imbert Corp. as a vehicle for splitting the funds they were pilfering from EH USA, and instead began utilizing a bank in Hong Kong in 2016-2017. These circumstances are discussed in greater detail in subsequent paragraphs of this Complaint, *infra*.

ton of certain steel products which Bolivar sourced in Asia, and it was processed by Edgar Santiago at EH USA.

b.      Edgar Santiago arranged for the Building Materials Division of EH USA, an unincorporated internal operating unit in EH USA for which he was division manager, to issue payment of the false purchase commissions, and arranged for EH USA's payment to be transmitted to Imbert Corp. in Pembroke Pines, Florida 33027.

c.      Subsequently, as to the EH USA funds which Edgar Santiago had caused to be transmitted to Imbert Corp. in Florida, Imbert Corp. wrote two checks out of its Wells Fargo Bank account in Miami Lakes, respectively made payable to Bolivar and Edgar Santiago with each receiving half of the total. [3]

d.      Upon receipt of the Imbert Corp. check payable to him, Edgar Santiago deposited the funds of his employer, EH USA, into one of his own personal accounts.

19.      Defendant Edgar Santiago concealed material facts from his employer, Plaintiff, including the fact that the fabricated invoice set forth a false, inflated purchase commission at $5.00, or more, for each ton of certain steel products and the fact that Plaintiff's funds transmitted to Imbert Corp. were diverted to Edgar Santiago.

20.      Independent of the foul scheme summarized in paragraphs 17-19 of this Complaint, *supra*, Edgar Santiago falsified business reports at EH USA concerning transactions and revenues in the years 2016-2017 to inaccurately report that revenues actually received by EH USA in 2017

---

[3] A bank utilized for the kickback to Edgar Santiago of EH USA funds he caused to be paid on Bolivar's false invoices, was Imbert Corp.'s account at the Wells Fargo Bank branch at 1561 NW 67th Avenue, Miami Lakes, Florida 33014, a short distance from 1100 SW 130th Avenue, H-209, Pembroke Pines, Florida, the business address of Imbert Corp.

were received the previous year, 2016. Edgar Santiago thus caused himself to be falsely credited with higher revenues in 2016 than the truthful numbers, and induced EH USA to pay him a 2016 performance bonus of $40,000 which he had not earned. This falsification of business reports had an additional direct consequence of causing EH USA to pay other employees in the Building Materials Division $35,000 which they had not earned. Edgar Santiago resigned from EH USA after the unearned 2016 performance bonus was paid to him, but prior to EH USA's discovery of his falsified reports.

21.     On information and belief, at the time Edgar Santiago falsified the reports concerning business transactions and revenues in 2016-2017, while he received salary, other remunerations and benefits paid and provided by EH USA to him, he had made plans to resign before his heinous acts were discovered by EH USA and had identified his future intended employer.

22.     The acts by Defendants caused Plaintiff to suffer damages exceeding one million dollars ($1,000,000.00), including pilfered funds and the invalid 2016 performance bonus.

## ALLEGATIONS COMMON
## TO ALL CAUSES OF ACTION

### Defendant Edgar Santiago

23.     Under applicable state law, the inherent responsibilities which defendant Edgar Santiago as an employee was required to fulfill during his employment by EH USA while he received wages, other remunerations and benefits paid and provided by EH USA as his current employer, included, but were not limited to, the following duties:

a.     Fidelity and undivided loyalty to his employer, EH USA;

b.     Honesty, openness and faithfulness to his employer, EH USA;

    c.      Performance of work, tasks and responsibilities in the best interests of his employer, EH USA;

    d.      Avoidance of conflicts of interest adverse to his employer, EH USA;

    e.      Disclose to his employer any potential conflict of interest; and

    f.      Provide accurate reporting in each report he prepares concerning a task in which he participates as an employee of EH USA, and accurately record each transaction.

24.     Defendant Edgar Santiago knew, or should have known, that all of these inherent duties were imposed on him because of the mere fact of his employment by EH USA, and that he must fulfill each of the inherent duties.

25.     However, defendant Edgar Santiago was much more than a mere employee of Plaintiff, EH USA.

26.     During all of the relevant times, defendant Edgar Santiago was EH USA's Executive Vice President – the second highest executive officer position - and the division manager of Plaintiff's Building Materials Division, an unincorporated internal operating unit in EH USA with substantial operations for which he was the division manager (as noted in Complaint para. 7-9 *supra*, positions which Edgar Santiago held from February 2011 to June 2, 2017).

27.     As Executive Vice President and Division Manager, defendant Edgar Santiago's responsibilities included acting for and to giving advice for the benefit of EH USA upon matters within the scope of the relation.

28.     Two time-tested measures of fiduciary status are: (1) a reliance test, under which one may be a fiduciary when others rely upon him because of a special relationship, and (2) a de facto control test, under which a person who in fact makes decisions may be held to be a fiduciary *See United States v. Reed*, 601 F. Supp. 685, 708 (SDNY 1985). Elements of a fiduciary relation

are the concepts of reliance, and de facto control and dominance.

29.     As Executive Vice President and Division Manager of EH USA, Plaintiff reposed special confidence in defendant Edgar Santiago, and his responsibilities included protecting the interests of EH USA.

30.     As a corporation officer, defendant Edgar Santiago's responsibilities included acting in good faith, loyalty and care, allegiance, devotion and faithfulness that must guide the conduct of every fiduciary.

31.     The good faith required of a corporate fiduciary includes not simply the duties of care and loyalty, but all actions required by a true faithfulness and devotion to the interests of the corporation and its shareholders.

32.     In addition to reposing special confidence in Edgar Santiago, EH USA reposed faith and trust in him and placed reliance on his judgment and advice.

33.     Defendant Edgar Santiago made decisions for EH USA and exercised de facto control and dominance in the corporation.

34.     Defendant Edgar Santiago knew, or should have known, that, because of his position as a corporation officer of EH USA and his high rank in the leadership of EH USA by being the division manager of its Building Materials Division, he owed fiduciary obligations to EH USA, and that he must fulfill each of the fiduciary obligations.

35.     During the period of time in which defendant Edgar Santiago was a fiduciary of EH USA, he failed to act in good faith and in the best interests of Plaintiff, he participated in acts which were adverse to the business of Plaintiff and adverse to its interests, he acted in a manner contrary to the interests of Plaintiff, he failed to make truthful and complete disclosures to Plaintiff, and he obtained an improper advantage at the expense of Plaintiff to whom a fiduciary duty was owed.

36.     Defendant Edgar Santiago breached his fiduciary duties owed to EH USA.

**_Imbert Corp. and Defendant Bolivar_**

37.    On information and belief, Nelson A. Imbert, is a citizen of the Dominican Republic with an address at Avenida Isabel Aguilar # 195, Santo Domingo, SD. Prior to the times which are relevant to the acts and disputes which are discussed in this Complaint, Mr. Imbert established an entity named Imbert Corp. in the Dominican Republic. The nature of the business of Imbert Corp. was a currency exchange agency.

38.    On information and belief, prior to the events discussed in this Complaint, Nelson Imbert and Janskie J. Cruz caused a similarly named entity which engages in the business of currency exchange agency to be incorporated in the State of Florida on February 20, 2015. The address for Imbert Corp. in Florida as registered with the Secretary of State in Florida was 1100 SW 130th Avenue, H-209, Pembroke Pines, Florida 33027. The initial incorporator was Janskie J. Cruz, and the two board directors were Janksie J. Cruz – address: 1100 SW 130th Avenue, Apartment H-209, Pembroke Pines, Florida 33027, and Nelson A. Imbert – address: Avenida Isabel Aguilar # 195, Santo Domingo, SD.

39.    Don Metal SRL is a Dominican Republic corporation with an address at C/Puerto Rico Esq. Carreterra Sanchez. Urb. Caribe, Barsequillo, Haina, San Cristobal, Dominican Republic. On information and belief, Don Metal SRL is the largest importer of steel products in the Dominican Republic.

40.    Defendant Bolivar was known by persons at Don Metal SRL before he was known by persons at EH USA. In early November, 2015, Don Metal SRL and Bolivar agreed that Bolivar would receive a purchase commission of $3.00 per ton for steel products sourced in Asia by a trading company in building materials and sold to Don Metal SRL in the Dominican Republic.

41.    The business of EH USA's Building Materials Division, an unincorporated internal operating unit in EH USA for which he was division manager, includes the sourcing of building

materials, including timber and other wood products and steel products, from leading suppliers in the Americas, Asia and Europe for sale by EH USA to customers all over the world. EH USA provides an added-value package of financing, risk management, shipping and marketing, and provides business expertise for its customers.

42.     Subsequent to Don Metal SRL and Bolivar's determination (early November 2015) that $3.00 per ton would be the amount of Bolivar's purchase commission which he would receive for steel products sourced in Asia, Saury Mota, Don Metal SRL's General Manager, introduced Bolivar to Edgar Santiago at EH USA.

43.     On information and belief, Don Metal SRL hoped that EH USA would be the trading company in building materials which would acquire steel products in Asia with Bolivar as the purchasing agent and sell the steel products to Don Metal SRL in the Dominican Republic with the added-value package of financing, risk management, shipping, marketing and business expertise which EH USA provides for its customers.

44.     It was discussed by Don Metal SRL and Bolivar that he needed a currency exchange agency to receive the purchase commissions he would earn for steel sourced by him in Asia.

45.     Don Metal SRL introduced Bolivar and Edgar Santiago to Nelson Imbert and Imbert Corp.

46.     During the years 2015-2016, Imbert Corp. performed numerous banking transactions in which it received funds from EH USA for a purchase commission paid to Bolivar, and Imbert Corp. then wrote a check to Bolivar.

47.     However, subsequent to defendant Edgar Santiago's resignation from EH USA on June 2, 2017, Plaintiff discovered that (i) back on November 5, 2015, after Edgar Santiago and Bolivar were introduced to Imbert Corp. as a currency exchange agency, Edgar Santiago and Bolivar conspired together to change the "commission" so that, instead of EH USA being invoiced at $3.00

for each ton of certain steel products which Bolivar sourced in Asia and EH USA sold to Don Metal

SRL, the purchase commissions were invoiced at $5.00, or more, for each ton of steel sourced by him

which was sold to Don Metal SRL; and (ii) Edgar Santiago caused EH USA to pay the invoice which

set forth an excessive commission; and (iii) Bolivar split the excessive commission with Edgar

Santiago.

48.     In effect, Edgar Santiago conspired against his employer, EH USA, to increase the

cost of the purchase commissions for steel sourced in Asia – from $3.00 to $5.00, or more, for each

ton of certain steel products – in order to create a stockpile of cash pilfered from EH USA which

Bolivar would split with him. An integral part of Defendants' scheme was that Edgar Santiago and

Bolivar each would personally receive an equal share of the $5.00, or more, excessive commissions

paid to Bolivar for each ton of certain steel products sourced by him which EH USA sold to its

customers.

49.     Defendants' scheme provided substantial economic motivation for Bolivar because,

even though, for the steel sourced in Asia which EH USA sold to Don Metal SRL, Bolivar was

reduced from receiving $3.00 to $2.50 for each ton of steel, Edgar Santiago interjected Bolivar and

his $5.00, or more, for each ton of steel excessive commission into steel transactions by EH USA

with customers other than Don Metal SRL. The result was that Bolivar received $2.50 for each ton of

steel sold to multiple EH USA's customers, not solely to Don Metal SRL, and the cumulative total

received by Bolivar far exceeded the $3.00 he would have received merely from EH USA's sale of

steel products to Don Metal SRL.

50.     On Defendants' initiative, one other EH USA customer who purchased certain steel

products sourced by Bolivar in Asia for delivery in the Caribbean was the subject of false, excessive

purchase commissions of $5.00, or more, per ton of steel, and payment of the commission was

transmitted by EH USA's Building Materials Division, to Imbert Corp., which subsequently

conveyed funds to Edgar Santiago and Bolivar. The one other EH USA customer was Agro Products Trading Corporation, c/o Agro Products & Services of Florida Corporation, Torre De Las Americas, Tower A, Lvl. 15, Off 28, Panama City, Republic of Panama.

51.     As previously noted, Defendants' theft of money from EH USA and money laundering activities in calendar years 2015-2016, included the following steps each time Bolivar sourced steel products in Asia for a sale by EH USA to one of its customers in the Caribbean (the caveat is discussed in fn. 2, *infra*):

      a.      A purchase commission invoice was fabricated at $5.00, or more, for each ton of certain steel products which Bolivar sourced in Asia, and it was processed by Edgar Santiago at EH USA.

      b.      Edgar Santiago arranged for the Building Materials Division of EH USA to issue payment for the false purchase commissions, and arranged for EH USA's payment to be transmitted to Imbert Corp. in Pembroke Pines, Florida 33027.

      c.      Subsequently, Imbert Corp. wrote a check out of its Wells Fargo Bank account in Miami Lakes, Florida, payable to Bolivar for half of the EH USA funds which Edgar Santiago caused to be transmitted to Imbert Corp., and Imbert Corp. wrote a second check to Edgar Santiago for the same amount.[4]

      d.      Upon receipt of the Imbert Corp. check payable to him, Edgar Santiago deposited the funds of his employer, EH USA, into one of his own personal accounts.

---

[4]     As previously noted in fn. 3, *supra*, a bank utilized for the kickback to Edgar Santiago of EH USA funds he arranged to be paid on Bolivar's false purchase commission invoices, was Imbert Corp' account at the Wells Fargo Bank branch at 1561 NW 67th Ave., Miami Lakes, Florida 33014, a short distance from Imbert Corp.'s business address.

52.     The checks by Imbert Corp. to Edgar Santiago in 2015-2016, in which he received half of the alleged commission paid by EH USA to Bolivar, included the following eleven checks from November 11, 2015 to February 5, 2016, each of which was signed by Janksie Cruz for Imbert Corp.:

Imbert Corp. – Eleven Checks –

Simple Business Checking Account # 3378072973

| Check # | | Date | Payee | Amount |
|---------|---|------|-------|--------|
| # 1131 | - | Nov. 11, 2015 | Edgar Santiago | $ 5,000.00 |
| # 1147 | - | Dec.  1, 2015 | Edgar Santiago | $ 5,000.00 |
| # 1148 | - | Unknown | Edgar Santiago | $ 5,000.00 |
| | | Replaced by check # 1151 on 12-10-15 | | |
| # 1149 | - | Dec.  1, 2015 | Edgar Santiago | $ 5,000.00 |
| # 1151 | - | Dec. 10, 2015 | Edgar Santiago | $ 5,000.00 |
| | | Reference Line on check # 1151 states: | | *"substituting ck. 1148"* |
| # 1155 | - | Dec. 17, 2015 | Edgar Santiago | $ 5,000.00 |
| # 1175 | - | Feb.  1, 2016 | Edgar Santiago | $ 5,000.00 |
| # 1176 | - | Feb.  1, 2016 | Edgar Santiago | $ 5,000.00 |
| # 1177 | - | Feb.  1, 2016 | Edgar Santiago | $ 5,000.00 |
| # 1178 | - | Feb.  5, 2016 | Edgar Santiago | $15,000.00 |
| # 1179 | - | Feb.  5, 2016 | Edgar Santiago | $15,000.00 |

53.     During the 13 week time period from November 11, 2015 to February 5, 2016 alone, Edgar Santiago's one-half of the funds which Defendants pilfered from EH USA, reflected in the eleven checks, was $70,000.00. In addition, on information and belief, there are many additional checks not contained in the list.

54.     Incredibly, five of the listed checks, totaling $45,000.00, were written during a FIVE DAY time period in the first week of February 2016.

55.     Concerning the eleven Imbert Corp. checks paid to "*Edgar Santiago*" listed in Complaint para. 52, *supra*, the following additional information is relevant:

a.      On the reverse of each Imbert Corp. check payable to Edgar Santiago, the check is endorsed by him with the following signature: "*E Santiago.*"

b.      On the reverse of check # 1131, dated 11/5/2015 for $5,000.00, there is a

handwritten note by Edgar Santiago in which he states he is endorsing the check for deposit into his account # ███████████.

   c.    On the reverse of three checks - # 1147, # 1151, and # 1179 - each for $5,000.00, respectively dated 12-01-2015, 12-10-2015 and 02/05/2016, there is no handwritten notation identifying the account owned by Edgar Santiago into which he deposited the funds.

   d.    On the reverse of check # 1149, dated 12/01/2015 for $5,000.00, there is a handwritten note by Edgar Santiago in which he states he is endorsing the check for "CHECKING DEPOSIT" without identifying a bank account number.

   e.    On the reverse of three checks - # 1175, # 1176, and # 1177, dated 02/01/2016 for $5,000.00, and on the reverse of two checks - # 1178 and # 1179, dated 02/05/2016 for $15,000.00, there is a handwritten note by Edgar Santiago in which he states he is endorsing the check for deposit into his account # ███████████

   f.    On the reverse of each endorsed check, there is a typed routing identification number that appears to be part of the bank clearing process.

56.    The eleven checks listed in Complaint para. 52, *supra*, are only the "tip of the iceberg" concerning Defendants' theft of funds from EH USA. On information and belief, there were many similar checks written by Imbert Corp. to Edgar Santiago and Bolivar in 2015-2016, plus many checks written by a Hong Kong bank to Edgar Santiago and Bolivar in 2016-2017 as a further part of their scheme.

57.    Beginning in 2017, Defendants began utilizing an account which defendant Bolivar established with a bank in Hong Kong as a new vehicle for his processing so-called "commission"

payments made by EH USA to him. The name of the bank in Hong Kong is: Hua Nan Commercial

Bank Ltd. (Hong Kong Branch) ("Hua Nan Bank"), and its address is Central Plaza, Floor 56, Suite

5601-03, 18 Harbour Road, Wanchai, HONG KONG.

58.     Subsequent to EH USA delivering one of the so-called "commission" payments to

Bolivar via Hua Nan Bank in HONG KONG, the bank relayed the funds to the following designated

"beneficiary" established by Defendants: "ILAQONNECT LIMITED" which had the following

designated address: 8F Kongling Building, 100 Jervois Street, Sheung Wan, HONG KONG.

59.     As previously was done with EH USA's innocent payments for "commissions" which

it delivered to Imbert Corp. in Florida to pay Defendants' fabricated, false invoices, which Edgar

Santiago and Bolivar split among themselves, the innocent payments which EH USA delivered to

Bolivar in care of Hua Nan Bank in HONG KONG, to pay the purchase commissions which Plaintiff

did not realize were false (funds relayed by the bank to ILAQONNECT LIMITED) were nefariously

split by Edgar Santiago and Bolivar.

60.     On information and belief, the total amount of money which Defendants by their

heinous scheme pilfered from EH USA in the years, 2015-2017, included more than $500,000.00

taken by Edgar Santiago and a similar amount of money taken by Bolivar.

61.     In hindsight, it appears that it is not coincidental that defendant Edgar Santiago

created and implemented his nefarious scheme to pilfer huge sums of money from his employer, EH

USA, in 2015, which was not long after he was discharged in bankruptcy, on October 8, 2014.

62.     According to the records of the United States Bankruptcy Court for the District of

New Jersey, defendant Edgar Santiago, and his spouse (Angela Santiago) filed a Chapter 13

voluntary bankruptcy petition on August 28, 2009, in the federal courthouse in Newark, New

Jersey. Their bankruptcy was administered for five long years. The final decree was issued on

November 6, 2014, the same day on which the Chapter 13 bankruptcy case was closed.

63.     On information and belief, defendant Edgar Santiago admitted that, in 2015-2016, he spent more than $500,000.00 on improvements to his own house in New Jersey, and improvements to his parents' house in Staten Island, New York.

64.     Years 2015-2016 are the two years immediately following the emergence of defendant Edgar Santiago and his wife from bankruptcy.

65.     In addition, defendant Edgar Santiago, in 2016, purchased a condominium in midtown Manhattan in which he does not reside.

66.     On information and belief, defendant Edgar Santiago did not have a legitimate source of income sufficient to pay $500,000.00 for improvements to his own house in New Jersey, and improvements to his parents' house in Staten Island, New York in 2015-2016, and to pay for a condominium in midtown Manhattan in which he does not reside.

67.     On information and belief, the substantial funds which defendant Edgar Santiago paid for improvements to his own house in New Jersey, and improvements to his parents' house in Staten Island, New York in 2015-2016, and to pay for a condominium in midtown Manhattan in which he does not reside, did not originate in legitimate funds, but instead originated in the vast sums of money which Edgar Santiago pilfered from his employer, EH USA.

68.     As previously noted, during the time period of the eleven Imbert Corp. checks listed in Complaint para. 52, *supra*, totaling $70,000.00 paid to defendant Edgar Santiago, he was a full time employee of EH USA, and the terms of his employment by EH USA pursuant to an oral agreement did not include his working for, or receiving payments from, any other company or enterprise.

69.     It is well settled under New York employment law that an employee owes a duty of fidelity and undivided loyalty to his employer who is paying wages for his services. *See Feiger v. Iral Jewelry, Ltd.*, 41 NY2d 928 (1977); *G.K. Alan Assoc., Inc. v. Lazzari*, 44 AD3d 95 (2d Dept

- 17 -

2007), *aff'd*, 10 NY3d 941 (2008); *Miller v. Brown Harris Stevens, Inc.*, 209 AD2d 171 (1st Dept 1994); *National Bank of Pakistan v. Basham, 148 AD2d 399* (1st Dept 1989).

70.     Indeed, as previously noted, in Complaint para. 23, *supra*, under applicable state law, the inherent duties of an employee which Edgar Santiago was required to fulfill during his employment by EH USA while he received wages, other remunerations and benefits paid and provided by EH USA as his current employer, included, but were not limited to, the following duties:

       a.     Fidelity and undivided loyalty to his employer, EH USA;

       b.     Honesty, openness and faithfulness to his employer, EH USA;

       c.     Performance of work, tasks and responsibilities in the best interests of his employer, EH USA;

       d.     Avoidance of conflicts of interest adverse to his employer, EH USA;

       e.     Disclose to his employer any potential conflict of interest; and

       f.     Provide accurate reporting concerning a task in which he participates as an employee of EH USA, and accurately record each transaction.

71.     Defendant Edgar Santiago never disclosed to his employer, EH USA, that he had a business or financial relationship with Imbert Corp.

72.     The payments by Imbert Corp. to defendant Edgar Santiago cannot validly be work related because Imbert Corp. is not a revenue source consistent with Edgar Santiago's employment by EH USA.

73.     The eleven Imbert Corp. checks listed in Complaint para. 52, *supra*, which total $70,000.00 paid to Edgar Santiago, are incremental. The fact that they arose in a short period of time, and especially that five of the checks (totaling $45,000.00) were written in only the first five days of February, 2016, is evidence that they are not installment payments, and instead each check must correspond to a particular event which precipitated a payment, such as a sales transaction.

74.     These facts also constitute evidence that there must be in existence, not just eleven checks, but many more checks which were paid to defendant Edgar Santiago by Imbert Corp., utilizing the same Wells Fargo Bank branch in Florida. [5]

75.     Wells Fargo Bank records which Plaintiff will seek to acquire during pretrial discovery should reveal all of the Imbert Corp. checks paid to defendant Edgar Santiago, and the similar checks which were paid to defendant Bolivar.

76.     Pretrial discovery should reveal the identity and location of the bank accounts of defendant Edgar Santiago and defendant Bolivar, and enable Plaintiff to identify what happened to the enormous sums of money which Defendants pilfered from Plaintiff.

**Defendant Angela Santiago Participated**
**in Defendants' Violations of Plaintiff's Ownership**
**and Possessory Rights in the Subject Property**

77.     During a subpoenaed deposition of non-party JP Morgan Chase Bank, N.A. (hereinafter, "JP Morgan") by Plaintiff on January 8, 2019, the bank produced documents (hereafter the "JP Morgan Documents") which, upon information and belief reveal that defendant Angela Santiago participated in activities at the heart of this federal court action.

78.     As alleged in previous paragraphs of this Complaint, Edgar Santiago stole at least one million dollars from his employer (Plaintiff). The stolen funds included at least $268,392.97 stolen by him from October of 2015 through May of 2016, money laundered by way of Wells Fargo Bank, N.A. in Florida ("Wells Fargo") and at least $675,427.52 stolen by him from June of 2016 through June of 2017, money laundered by Defendants by way of Hua Nan Commercial Bank in Hong Kong ("Hua Nan Bank").

79.     The JP Morgan Documents, among other things, and upon information and belief,

---

[5]   Wells Fargo Bank branch located at 1561 NW 67th Avenue, Miami Lakes, Florida 33014. See fn. 3, *supra*.

show that $69,000 of the funds which Defendants stole from Plaintiff were kick backed by defendant Bolivar to defendant Edgar Santiago routed through Wells Fargo and deposited into the personal checking account with JP Morgan solely owned by Edgar Santiago.

80.     The JP Morgan Documents also show that, upon information and belief, $588,713.99 of the funds which Defendants stole from Plaintiff were kick backed by defendant Bolivar to defendant Santiago routed through Hua Nan Bank, wire transferred by Bolivar utilizing his company – ILAQONNECT LIMITED - into Edgar Santiago's solely owned JP Morgan personal checking account.

81.     More particularly, those JP Morgan Documents show seventeen (17) incoming wire transfers totaling $588,713.99 deposited to defendant Edgar Santiago's solely owned JP Morgan personal checking account from June of 2016 through September of 2017, including $121,333.40 wired to Edgar Santiago on one day in January of 2017.

82.     Each of these seventeen (17) wire transfers was an illegal kickback by defendant Bolivar to defendant Edgar Santiago out of a portion of money which Defendants had stolen from Plaintiff during the 15 months from June 2016 through September 2017, which they caused to be delivered to defendant Bolivar by way of his ILAQONNECT LIMITED account with Hua Nan Bank.

83.     In addition, the JP Morgan Documents, show numerous substantial deposits into defendant Edgar Santiago's solely owned JP Morgan personal checking account which were not wages or salary on thirteen dates from July of 2015 through August of 2016, totaling 95,655.04.

84.     The JP Morgan Documents also show defendant Edgar Santiago, in various ways, dispersed the funds that Defendants had stolen from Plaintiff which were kick backed to Edgar Santiago, including countless withdrawals, including a multitude of $10,000 and $5,000 cash withdrawals and checks which Edgar Santiago wrote to himself which he cashed.

85.     More particularly, the countless cash withdrawals by defendant Edgar Santiago

from his solely owned JP Morgan personal checking account from January 2016 through August 2017, totaled $321,651.49 and included cash withdrawals executed by Edgar Santiago with a bank teller and cash withdrawals by checks written to himself. Beginning in July 2016, the subtotal of cash withdrawals per month was $10,000.00 to $30,000.00 or more each month. For example, Edgar Santiago during one month (July 2017) withdrew $54,644.00 from the JP Morgan personal checking account, and in September 2017 he withdrew $34,381.27.

86. The JP Morgan Documents also show numerous money transfers by defendant Edgar Santiago to three Capital One bank accounts solely owned by him, including $133,092.73 during the 15 months from June 2016 through August 2017.

87. The JP Morgan Documents also show ten money transfers totaling $30,000.00 by defendant Edgar Santiago to one Bank of America account solely owned by him in just seven months - from January 2017 through August 2017, including four transfers subtotaling $15,000.00 in one month - May 2017.

88. The JP Morgan Documents also show numerous money transfers by defendant Edgar Santiago, upon information and belief, to his spouse, defendant Angela Santiago, and/or for her benefit, totaling more than $50,000.00, including three checks from his JP Morgan account to her ($15,000.00, $10,000.00, $15,200.00, respectively in July 2016, August 2016 and January 2017), plus money transfers by him of more than $10,000 paid to Carmel Richmond HC & RC for, upon information and belief, a debt owed by Angela Santiago.

89. The JP Morgan Documents also show that there were numerous money transfers by defendant Edgar Santiago to a corporation named: "314-16-18 West 36 Street Housing Development Fund Corporation", concerning the purchase of two condominium apartments in midtown Manhattan (Units 2B and 3A at 318 West 36th Street, New York, New York), in which, upon information and belief Angela Santiago has an interest in addition to her spouse, Edgar Santiago.

90.      Upon information and belief, the JP Morgan Documents show that defendant Angela Santiago received possession of money transferred by her spouse, defendant Edgar Santiago, out of the funds he stole from Plaintiff described in the Complaint for which Plaintiff solely had a right of possession

91.      Defendant Angela Santiago, along with defendants Edgar Santiago and Bolivar interfered, with Plaintiff's right of possession concerning the funds stolen from Plaintiff.

92.      The JP Morgan Documents also show defendant Angela Santiago received the benefit of other portions of the stolen funds utilized as payment for the two condominiums.

93.      The facts summarized in prior paragraphs of this Complaint provide grounds for Plaintiff to bring causes of action against defendant Angela Santiago as an additional defendant in the Action, including, but not limited to, Conversion, Aiding and Abetting a Conversion, Replevin and Unjust Enrichment.

### *Defendant Edgar Santiago's False Reporting of 2016-2017 Revenue*

94.      Independent of the foul scheme discussed in prior paragraphs of this Complaint, *supra*, defendant Edgar Santiago falsified business reports at EH USA in order to acquire a performance bonus which he did not validly earn.

95.      Performance bonuses awarded by EH USA are conferred based on the size of revenues and transactions during a calendar year.

96.      Defendant Edgar Santiago falsified business reports concerning transactions and revenues in calendar years 2016-2017 for the Building Materials Division for which he was the division manager which falsely overstated the 2016 revenue by accelerating the reporting of 2017 revenues.

97.      Edgar Santiago inaccurately reported that revenues actually received by EH USA in 2017 (allegedly) were received the previous year, 2016.

98.    Defendant Edgar Santiago thus caused himself to be falsely credited with higher revenues in 2016 than the truthful numbers, and induced EH USA to pay him a 2016 performance bonus of $40,000 which he had not validly earned.

99.    While defendant Edgar Santiago was preparing false business reports which falsely reported revenues for 2016-2017, he received salary, other remunerations and benefits paid and provided by EH USA to him.

100.    On information and belief, at the same point in time while Edgar Santiago was an employee of EH USA being paid wages and benefits by EH USA, he already had made plans to resign his employment by EH USA, and he had identified his future intended employer as Central National Gottesman, Inc., a direct competitor of EH USA.

101.    Immediately after he resigned from EH USA, defendant Edgar Santiago commenced employment by Central National Gottesman, Inc.

102.    Defendant Edgar Santiago's fabrication of false business reports inaccurately identifying total revenues in 2016, had an additional direct consequence of causing EH USA to pay other employees in the Building Materials Division, $17,000 which they had not validly earned.

103.    The three persons who were employees in the Building Materials Division and, as a direct result of Edgar Santiago's fabrication of false business reports, received a bonus were (1) Carlos Cevallos - $7,000; (2) Melissa Benscome - $7,000; and (3) Linnette Leger - $3,000.

104.    Each of those three persons (Cevallos, Benscome and Leger) resigned employment by EH USA and departed the company with defendant Edgar Santiago and became employed by Central National Gottesman, Inc., Edgar Santiago's new employer.

105.    Edgar Santiago's false reporting of business and revenues for 2016-2017 was a clear violation of both his fiduciary obligations and his duty of undivided loyalty to his current employer, EH USA.

- 23 -

106.    While defendant Edgar Santiago formulated his nefarious schemes to pilfer substantial money from his employer, EH USA, and he conspired with Bolivar to take the money, and to falsely report business and revenue to obtain a performance bonus he did not validly earn, Edgar Santiago was employed as EH USA Executive Vice President and division manager of Building Materials Division, two significant leadership positions with fiduciary responsibilities.

107.    In addition, he was receiving a substantial salary, other remunerations and employee benefits, paid and provided by EH USA to him.

108.    These acts and activities by defendant Edgar Santiago were performed with the intention to trade on the secondary meaning established by Plaintiff in its name on a world-wide basis, deceive Plaintiff's sources and customers, and pilfer business and revenues from Plaintiff.

***AS AND FOR A***
***FIRST CAUSE OF ACTION***

*(Breach of Employment Contract –*
*Against Defendant Edgar Santiago)*

109.    Plaintiff repeats and realleges the allegations which are set forth in paragraphs 1 through 108, *supra*, as though they were fully set forth herein.

110.    Plaintiff and defendant Edgar Santiago formed their "at will" verbal employment contract when EH USA's legal predecessor numerous years ago offered him employment, and Edgar Santiago accepted the offer of employment with the parties agreeing upon the material terms of his employment, including his job position, his job responsibilities, work circumstances including location, and the amount of compensation which Edgar Santiago would receive from his employer for the work he would perform for the company.

111.    Beginning in February, 2011, defendant Edgar Santiago while employed by Plaintiff was promoted to two positions: Executive Vice President of EH USA and division manager for the Building Materials Division which includes transactions concerning all grades of

timber and steel products utilized in the building industry.

112.   Defendant Edgar Santiago while employed by Plaintiff continued to hold both of those leadership positions at EH USA until he resigned his employment by EH USA on June 2, 2017.

113.   Under applicable state law, inherent responsibilities of an employee which Edgar Santiago was required to fulfill during his employment by EH USA while he received wages, other remunerations and benefits paid and provided by EH USA as his employer, included, but were not limited to, the following responsibilities:

> a.   Fidelity and undivided loyalty to his employer, EH USA;
>
> b.   Honesty, openness and faithfulness to his employer, EH USA;
>
> c.   Performance of work, tasks and responsibilities in the best interests of his employer, EH USA;
>
> d.   Avoidance of conflicts of interest adverse to his employer, EH USA;
>
> e.   Disclose to his employer any potential conflict of interest; and
>
> f.   Provide accurate reporting concerning a task in which he participates as an employee of EH USA, and accurately record each transaction.

114.   Throughout the time period of his employment by EH USA from February, 2011 to June 2, 2017, defendant Edgar Santiago received a substantial salary, other remunerations, and employee benefits paid and provided to him by Plaintiff.

115.   As summarized in Complaint paragraphs 5-114, *supra*, defendant Edgar Santiago failed to fulfill the inherent responsibilities of an employee which he was employed by EH USA receiving wages, other remunerations and benefits paid and provided by EH USA as his current employer.

116.   Plaintiff fully performed all of its contractual obligations.

117.    Defendant Edgar Santiago failed to perform his contractual obligations, including the responsibilities summarized in Complaint paragraphs 22, 70 and 113, *supra*, and he breached his employment contract with Plaintiff.

118.    The breaches of contract by defendant Edgar Santiago included: he failed to act in the best interests of his employer, Plaintiff; he acted in a manner contrary to the interests of Plaintiff; he failed to make truthful and complete disclosures to Plaintiff; he created conflicts of interest with, and obtained an improper advantage at the expense of, his employer, Plaintiff; and he participated in acts and activities adverse to the business of Plaintiff and adverse to its interests.

119.    Defendant Edgar Santiago concealed these acts and actions from Plaintiff and concealed his personal interests in the heinous scheme and illicit transactions concerning false purchase commissions and money laundering, money pilfered by Defendants from Plaintiff, and defendant Edgar Santiago's misconduct in preparing false business and revenue reports which he utilized to obtain a performance bonus for calendar year 2017 which he did not truthfully earn.

120.    The breaches of contract by defendant Edgar Santiago caused Plaintiff to suffer substantial damages in an amount to be determined which exceeds one million dollars ($1,000,000.00), none of which was caused by Plaintiff. Defendant Edgar Santiago is liable to Plaintiff for a judgment in this amount.

### AS AND FOR A
### SECOND CAUSE OF ACTION

*(Violation of Duty of Fidelity and Undivided Loyalty
to Employer – Against Defendant Edgar Santiago)*

121.    Plaintiff repeats and realleges the allegations which are set forth in paragraphs 1 through 120, *supra*, as though they were fully set forth herein.

122.    Under applicable state law, the inherent responsibilities which Edgar Santiago was required to fulfill during his employment by EH USA while he received wages, other

remunerations and benefits paid and provided by EH USA as his current employer, included, but was not limited to, undivided loyalty to his employer, EH USA.

123.    Defendant Edgar Santiago violated his duty of fidelity and undivided loyalty which was owed to his employer, EH USA.

124.    Plaintiff fulfilled all of its duties to Edgar Santiago.

125.    Defendant Edgar Santiago caused Plaintiff to suffer substantial damages in an amount to be determined which exceeds one million dollars ($1,000,000.00), none of which was caused by Plaintiff. Defendant Edgar Santiago is liable to Plaintiff for a judgment in this amount.

## AS AND FOR A
## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duties –
### Against Defendant Edgar Santiago)

126.    Plaintiff repeats and realleges the allegations which are set forth in paragraphs 1 through 125, *supra*, as though they were fully set forth herein.

127.    A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation. *See Northeast Gen. Corp. v. Wellington Advertising*, 82 N.Y.2d 158, 172-173, citing, Restatement [Second] of Torts § 874, comment *a*.

128.    Two time-tested measures of fiduciary status are: (1) a reliance test, under which one may be a fiduciary when others rely upon him because of a special relationship, and (2) a de facto control test, under which a person who in fact makes decisions may be held to be a fiduciary *See United States v. Reed*, 601 F. Supp. 685, 708 (SDNY 1985).

129.    Elements of a fiduciary relation are the concepts of reliance, and de facto control and dominance. *Northeast Gen. Corp. v. Wellington Advertising*, 82 N.Y.2d 158, 173 (1993), *citing, Reed, supra,* at 708 [***10] [quoting *United States v Margiotta,* 688 F2d 108, 125 (2d Cir.

1982), *cert denied* 461 US 913 (1983)]).

130.   A fiduciary relationship arises where one person reposes special confidence in another, or where a special duty exists on the part of one person to protect the interests of another, or where there is a reposing of faith, confidence, and trust, and the placing of reliance by one person on the judgment and advice of another. *See Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1058 (Del. Super. 2001).

131.   A Delaware corporation, such as Elof Hansson USA Inc., owes a triad of fiduciary duties to its shareholders and the corporation, composed of the duty of care, the duty of loyalty, and the duty to act in good faith, and corporate officers have identical fiduciary duties. *See KDW Restructuring & Liquidation Servs. LLC v. Greenfield*, 874 F. Supp. 2d 213, 221 (SDNY 2012).

132.   The duties which belong to corporate fiduciaries, loyalty and care, are constituent elements of the overarching concepts of allegiance, devotion and faithfulness that must guide the conduct of every fiduciary; the good faith required of a corporate fiduciary includes not simply the duties of care and loyalty, but all actions required by a true faithfulness and devotion to the interests of the corporation and its shareholders. *See In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 755 (Del. Chancery Court, New Castle 2005), cited in *KDW Restructuring*.

133.   A breach of fiduciary duty claim has two elements: (1) the existence of a fiduciary duty, and (2) the breach of that duty. *Stanacard, LLC v. Rubard, LLC, 2016 U.S. Dist. LEXIS 15721, *65, 2016 WL 462508, citing, KDW Restructuring*, 874 F. Supp. at 221 (SDNY 2012).

134.   Plaintiff EH USA reposed special confidence in defendant Edgar Santiago as Executive Vice President (the second highest executive officer position in the corporation), and as division manager of the key Building Materials Division, and a special duty existed on the part of Edgar Santiago to protect the interests of EH USA.

135.    Plaintiff EH USA reposed faith, confidence, and trust in defendant Edgar Santiago and placed reliance on the judgment and advice of Edgar Santiago.

136.    Defendant Edgar Santiago made decisions for EH USA and exercised de facto control and dominance in the corporation.

137.    In his capacity as an officer of EH USA with the title of Executive Vice President of EH USA (the second highest executive officer position at the corporation), and because of the facts and circumstances previously discussed, and the company's reliance on him, his de facto control and dominance in the corporation, defendant Edgar Santiago was a fiduciary who owed fiduciary obligations to EH USA. *See Pangia & Co., CPA's P.C. v. Diker*, 291 A.D.2d 539 (2nd Dept 2002).

138.    A person acting in a fiduciary capacity is required to make truthful and complete disclosures to those to whom a fiduciary duty is owed, and the fiduciary is forbidden to obtain an improper advantage at the expense of the person to whom a fiduciary duty is owed.

139.    A fiduciary may not participate in any act which is adverse to the economic interests or other interests of the person to whom the fiduciary duty is owed.

140.    During the period of time in which Edgar Santiago was a fiduciary of EH USA, he failed to act in good faith and in the best interests of Plaintiff, he participated in acts which were adverse to the business of Plaintiff and adverse to its interests, he acted in a manner contrary to the interests of Plaintiff, he failed to make truthful and complete disclosures to Plaintiff, and he obtained an improper advantage at the expense of Plaintiff to whom a fiduciary duty was owed.

141.    Defendant Edgar Santiago concealed the afore-described acts from Plaintiff and concealed his personal interests in the heinous scheme and transactions concerning false purchase commissions and money laundering.

142.    The acts performed by defendant Edgar Santiago were intentional in having been

- 29 -

done deliberately.

143.    Defendant Edgar Santiago breached his fiduciary duties owed to EH USA.

144.    As a direct result of the acts and actions performed by defendant Edgar Santiago, Plaintiff suffered substantial damages, in an amount to be determined which exceeds one million dollars ($1,000,000.00), none of which was caused by Plaintiff.

145.    The liability of a person who has been a fiduciary for his acts in which he violated his fiduciary obligations to the corporation or engaged in a misappropriation does not expire upon his resignation from the corporation. *See 7th Sense v. Liu*, 220 A.D.2d 215, 216, 631 N.Y.S.2d 835, 836 (1st Dept 1995).

146.    Defendant Edgar Santiago is liable to Plaintiff for a judgment in the aforesaid amount.

### AS AND FOR A
### FOURTH CAUSE OF ACTION
*(Faithless Servant Doctrine –*
*Against Defendant Edgar Santiago)*

147.    Plaintiff repeats and realleges the allegations which are set forth in paragraphs 1 through 146, *supra*, as though they were fully set forth herein.

148.    An employee who engages in infidelity to his employer and acts adversely to the interests of his employer, or omits to disclose any interest which would naturally influence the employee's conduct in dealing with the subject of the employment, commits a fraud against the employer and forfeits any right to compensation for his or her services during the entire period of time he or she is a faithless servant. *See Feiger v. Iral Jewelry, Ltd.*, 41 NY2d 928 (1977); *G.K. Alan Assoc., Inc. v. Lazzari*, 44 AD3d 95 (2d Dept 2007), *aff'd*, 10 NY3d 941 (2008); *Miller v. Brown Harris Stevens, Inc.*, 209 AD2d 171 (1st Dept 1994); *National Bank of Pakistan v. Basham*, 148 AD2d 399 (1st Dept 1989).

149.    The remedy of compensation forfeiture includes not only wages, but also fringe benefits such as vacation pay and payments pursuant to a pension plan that provides for forfeiture upon the employee's discharge for misconduct. *See National Bank of Pakistan v. Basham, supra.*

150.    The remedy of compensation forfeiture to which the employer is entitled is applicable even if the employee has otherwise performed in an exemplary manner. *See Binghamton v. Whalen*, 141 AD3d 145 (3d Dept 2016); *see also Feiger v. Iral Jewelry, Ltd., supra.*

151.    As previously noted, beginning on November 5, 2015, defendant Edgar Santiago performed acts directly adverse to the interests of Plaintiff, including the illegal and illicit pilfering of funds from EH USA performed in the heinous scheme with defendant Bolivar based on false purchase commissions at an excessive, inflated rate, and money laundering activities which touched, not New York, the Dominican Republic, Florida and Hong Kong.

152.    The scheme and pilfering continued from November 5, 2015 until the final date of Edgar Santiago's employment (June 2, 2017).

153.    Defendant Edgar Santiago concealed these acts and actions from Plaintiff and concealed his personal interests in the heinous scheme and illicit transactions.

154.    The acts and actions performed by defendant Edgar Santiago were intentional in having been done deliberately.

155.    Defendant Edgar Santiago violated New York law which prohibits an employee from being a faithless servant to his employer, and, by his illicit acts and actions contrary to the interests of his employer (Plaintiff EH USA), he forfeited any right to have received wages or other compensation during the period of time in which he was a faithless servant.

156.    Accordingly, Plaintiff is entitled to a judgment which orders defendant Edgar Santiago to disgorge and return to Plaintiff all of the wages and other compensation he received from Plaintiff during the entire period of time from November 5, 2015 through the final date of his

employment, June 2, 2017, and all compensation he may have received from EH USA because of his employment from November 5, 2015 to June 2, 2017.

### AS AND FOR A
### FIFTH CAUSE OF ACTION

*(Conversion – Wrongful Taking - Against*
*Defendants Edgar Santiago and Bolivar Quinones)*

157.    Plaintiff repeats and realleges the allegations which are set forth in paragraphs 1 through 156, *supra*, as though they were fully set forth herein.

158.    Plaintiff had the sole possessory right to the subject EH USA funds.

159.    Defendants Edgar Santiago and Bolivar Quinones without authority intentionally exercised control over Plaintiff's property by causing EH USA's funds in an amount in excess of one million dollars ($1,000,000.00) to be paid out and transmitted away from Plaintiff in New York and delivered, respectively, to Imbert Corp. in Florida and to Hua Nan Commercial Bank Ltd. in Hong Kong.

160.    The transmittal of EH USA's funds respectively to Imbert Corp. in Florida and to Hua Nan Commercial Bank Ltd. in Hong Kong was, upon information and belief, under false pretenses.

161.    The funds in the bank accounts into which defendant Edgar Santiago and defendant Bolivar deposited the proceeds of the Imbert Corp. checks are EH USA funds which Defendants converted.

162.    The funds in the bank accounts into which defendant Edgar Santiago and defendant Bolivar deposited the proceeds of the funds transfers to Hua Nan Commercial Bank are EH USA funds which Defendants converted.

163.    Defendants Edgar Santiago and Bolivar Quinones each without authority intentionally exercised control over Plaintiff's property by obtaining possession of EH USA's

funds in which Plaintiff had the sole possessory right.

164.    Defendants Edgar Santiago and Bolivar Quinones each interfered with Plaintiff's possession of EH USA's funds.

165.    Defendants Edgar Santiago and Bolivar Quinones each intended to interfere with Plaintiff's possession of EH USA's funds.

166.    The interference with Plaintiff's possession of its funds by each of the Defendants - Edgar Santiago and Bolivar Quinones - was in derogation of Plaintiff's rights.

167.    The conversion was not lawful and began with a wrongful taking.

168.    Accordingly, no demand for return of the property was required.

169.    Each of the aforesaid Defendants - Edgar Santiago and Bolivar Quinones - is jointly and severally liable for the value of Plaintiff's property which was the subject of Defendants' conversion – wrongful taking, in an amount to be determined which exceeds one million dollars ($1,000,000.00).

### AS AND FOR A
### SIXTH CAUSE OF ACTION

*(Conversion – Wrongful Disposal or Use –
Against Defendants Edgar Santiago, Angela Santiago
and Bolivar Quinones)*

170.    Plaintiff repeats and realleges the allegations which are set forth in paragraphs 1 through 169, *supra*, as though they were fully set forth herein.

171.    Plaintiff had the sole possessory right to the subject EH USA funds.

172.    Defendants Edgar Santiago and Bolivar Quinones without authority intentionally exercised control over Plaintiff's property by causing EH USA's funds in an amount in excess of one million dollars ($1,000,000.00) to be paid out and transmitted away from Plaintiff in New York and delivered, respectively, to Imbert Corp. in Florida and to Hua Nan Commercial Bank Ltd. in Hong Kong.

173.    The transmittal of EH USA's funds respectively to Imbert Corp. in Florida and to Hua Nan Commercial Bank Ltd. in Hong Kong was under false pretenses.

174.    The funds in the bank accounts into which defendant Edgar Santiago and defendant Bolivar deposited the proceeds of the Imbert Corp. checks are EH USA funds which Defendants converted.

175.    The funds in the bank accounts into which defendant Edgar Santiago and defendant Bolivar deposited the proceeds of the funds transfers to Hua Nan Commercial Bank are EH USA funds which Defendants converted.

176.    Defendants Edgar Santiago, Angela Santiago and Bolivar Quinones each without authority intentionally exercised control over Plaintiff's property by obtaining possession of EH USA's funds in which Plaintiff had the sole possessory right.

177.    Defendants Edgar Santiago, Angela Santiago and Bolivar Quinones each interfered with Plaintiff's possession of EH USA's funds.

178.    Defendants Edgar Santiago, Angela Santiago and Bolivar Quinones each intended to interfere with Plaintiff's possession of EH USA's funds.

179.    Concerning the property in which Plaintiff had the sole possessory right which Defendants Edgar Santiago, Angela Santiago and Bolivar Quinones received, each of them wrongfully disposed of or wrongfully used Plaintiff's property.

180.    The interference with Plaintiff's possession of its funds by each of the Defendants - Edgar Santiago and Bolivar Quinones - was in derogation of Plaintiff's rights.

181.    The conversion was not lawful and began with a wrongful taking.

182.    Accordingly, no demand for return of the property was required.

183.    Each of the Defendants - Edgar Santiago, Angela Santiago and Bolivar Quinones - is jointly and severally liable for the entire value of Plaintiff's property which was the subject of

Defendants' conversion – wrongful disposal or use, in an amount to be determined which exceeds one million dollars ($1,000,000.00).

## AS AND FOR A
## SEVENTH CAUSE OF ACTION

*(Conversion – Wrongful Detention -*
*Against Defendants Edgar Santiago, Angela Santiago*
*and Bolivar Quinones)*

184.   Plaintiff repeats and realleges the allegations which are set forth in paragraphs 1 through 169, *supra*, as though they were fully set forth herein.

185.   Plaintiff had the sole possessory right to the subject EH USA funds.

186.   Each of the Defendants - Edgar Santiago, Angela Santiago and Bolivar Quinones – received possession of the property of Plaintiff – the funds in which Plaintiff had the sole possessory right.

187.   A person who obtains possession of another person's property in which only the other person has a right of possession acquires no title in the property

188.   Each of the Defendants - Edgar Santiago, Angela Santiago and Bolivar Quinones – without authority intentionally exercised control over Plaintiff's property in such a manner as to interfere with Plaintiff's right of possession of EH USA's funds.

189.   The interference with Plaintiff's possession of its funds by each of the Defendants - Edgar Santiago, Angela Santiago and Bolivar Quinones - was in derogation of Plaintiff's rights.

190.   The conversion was not lawful and began with a wrongful taking.

191.   No demand for return of the property was or is required as a matter of law.

192.   Defendants' concealment of their interference with Plaintiff's right of possession of EH USA's funds prevented Plaintiff from making a demand for return of the property.

193.   Each of the Defendants – Edgar Santiago, Angela Santiago and Bolivar Quinones - is jointly and severally liable for the value of Plaintiff's property which was the subject of

Defendants' conversion – wrongful detention, in an amount to be determined which exceeds one million dollars ($1,000,000.00).

***AS AND FOR A***
***EIGHTH CAUSE OF ACTION***

*(Aiding and Abetting a Conversion –*
*Against Defendant Angela Santiago)*

194.    Plaintiff repeats and realleges the allegations which are set forth in paragraphs 1 through 193, *supra*, as though they were fully set forth herein.

195.    On information and belief, defendant Angela Santiago aided and assisted the conversion – wrongful taking by defendant Edgar Santiago with culpable knowledge that the funds that Edgar Santiago received and wrongfully detained in which Plaintiff had the sole possessory right - did not belong to Edgar Santiago.

196.    On information and belief, Defendant Angela Santiago was aware that her spouse (Edgar Santiago) and she jointly filed bankruptcy on August 28, 2009 and they were discharged from bankruptcy on October 8, 2014, and that not long afterwards, during the time period from 2015 through at least June 2017, Edgar Santiago was receiving enormous sums of money from sources other than wages and salary, and Edgar Santiago was spending enormous amounts of money, and he was withdrawing substantial sums of money from bank accounts, and he transferred substantial sums of money to her in checks totaling more than $40,000, and he paid debt obligations owed by her, and he provided expensive gifts to her, and he purchased an interest in two midtown Manhattan apartments, and he spent substantial amounts of money to improve their home in New Jersey, and he spent substantial amounts of money to improve the home of his parents in Staten Island, New York.

197.    Defendant Angela Santiago knew of and acquiesced in defendant Edgar Santiago's actions.

- 36 -

198.    Accordingly, defendant Angela Santiago is liable for aiding and abetting the conversion by her spouse, defendant Edgar Santiago. *See Torrance Construction, Inc. v. Jaques,* 127 AD3d 1261 (3rd Dept. 2015), *citing Lenczycki v. Shearson Lehman Hutton,* 238 AD2d 248 (1st Dept 1997), *lv dismissed and denied* 91 NY2d 918 (1998).

199.    Defendant Angela Santiago is liable for the value of Plaintiff's property which was the subject of Defendants' conversion in an amount to be determined which exceeds one million dollars ($1,000,000.00).

### AS AND FOR A
### NINTH CAUSE OF ACTION

*(Replevin – Against Defendants Edgar Santiago,
Angela Santiago and Bolivar Quinones)*

200.    Plaintiff repeats and realleges the allegations which are set forth in paragraphs 1 through 199, *supra*, as though they were fully set forth herein.

201.    Plaintiff is the sole owner of all of the proceeds of the funds owned by EH USA which EH USA transmitted to Imbert Corp. in Florida and subsequently, upon receipt by defendant Edgar Santiago or defendant Bolivar, were deposited by them into other financial accounts in their name or controlled by them, or were otherwise utilized by Edgar Santiago or Bolivar.

202.    Plaintiff is the sole owner of all of the proceeds of the funds owned by EH USA which EH USA transmitted to Hua Nan Commercial Bank Ltd. in Hong Kong and subsequently, upon receipt by defendant Edgar Santiago or defendant Bolivar, were deposited by them into other financial accounts in their name or controlled by them, or were otherwise utilized by Edgar Santiago or Bolivar.

203.    Defendant Edgar Santiago performed one or more acts in violation of Plaintiff's rights by causing EH USA to transmit the funds to Imbert Corp. in Florida and by permitting the EH USA funds to be received by Edgar Santiago and to be received by Bolivar.

204.    Defendant Edgar Santiago performed one or more acts in violation of Plaintiff's rights by causing EH USA to transmit the funds to Hua Nan Commercial Bank Ltd. in Hong Kong and by permitting the EH USA funds to be received by Edgar Santiago and to be received by Bolivar.

205.    The funds in the bank accounts into which defendant Edgar Santiago and defendant Bolivar deposited the proceeds of the Imbert Corp. checks are funds owned by EH USA in which Defendants - Edgar Santiago, Angela Santiago and Bolivar Quinones - acquired possession in violation of Plaintiff's possessory rights.

206.    The funds in the bank accounts into which defendant Edgar Santiago and defendant Bolivar deposited the proceeds of the transfers from EH USA to Hua Nan Commercial Bank Ltd. in Hong Kong are funds owned by EH USA in which Defendants - Edgar Santiago, Angela Santiago and Bolivar Quinones - acquired possession in violation of Plaintiff's possessory rights.

207.    Plaintiff would be entitled to a judgment restraining each of the Defendants from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to Plaintiffs.

208.    Plaintiff requests the Court to issue and enter an Order which awards a preliminary injunction, pursuant to Fed. R. Civ. P. Rule 65, in favor of Plaintiff and against each of the Defendants - Edgar Santiago, Angela Santiago and Bolivar Quinones - including, but not limited to, an Order which orders each of the Defendants to immediately return to Plaintiff all of the funds owned by Plaintiff which were transmitted by Imbert Corp. to Edgar Santiago and/or to Bolivar in which any of the Defendants - Edgar Santiago, Angela Santiago and Bolivar Quinones - acquired possession in violation of Plaintiff's possessory rights.

209.    Plaintiff requests the Court to issue and enter an Order which awards a preliminary injunction, pursuant to Fed. R. Civ. P. Rule 65, in favor of Plaintiff and against each of the

Defendants - Edgar Santiago, Angela Santiago and Bolivar Quinones - including, but not limited to, an Order which orders each of the Defendants to immediately return to Plaintiff all of the funds owned by Plaintiff which were transmitted by Hua Nan Commercial Bank Ltd. to Edgar Santiago and/or to Bolivar in which any of the Defendants - Edgar Santiago, Angela Santiago and Bolivar Quinones - acquired possession in violation of Plaintiff's possessory rights.

210.    The court should award the requested preliminary injunction to compel each of the Defendants to return to Plaintiff, the sole rightful owner of the EH USA funds, all of the funds owned by EH USA funds in which any of the Defendants - Edgar Santiago, Angela Santiago and Bolivar Quinones - acquired possession in violation of Plaintiff's possessory rights.

211.    Plaintiff further requests that, in due course, the Court will issue and enter an Order with a permanent injunction in favor of Plaintiff and against each of the Defendants - Edgar Santiago, Angela Santiago and Bolivar Quinones - in which the Court makes permanent the injunctive relief and any other relief which is provided in the initial Order that awards a preliminary injunction in favor of Plaintiff and against each of the Defendants.

### AS AND FOR A
### TENTH CAUSE OF ACTION

*(Unjust Enrichment – Against Defendants Edgar Santiago,*
*Angela Santiago and Bolivar Quinones)*

212.    Plaintiff repeats and realleges the allegations which are set forth in paragraphs 1 through 211, *supra*, as though they were fully set forth.

213.    Each of the Defendants illicitly expropriated money from Plaintiff by participating in the heinous scheme to pilfer funds from EH USA which included false purchase commissions at an excessive, inflated rate, and money laundering activities which touched, not only New York, but also Asia, the Dominican Republic, and Florida.

214.    In taking money from Plaintiff, defendant Edgar Santiago unjustly enriched himself

in an amount to be determined, but in any event not less than one million dollars ($1,000,000.00).

215.    In taking money from Plaintiff, defendant Bolivar unjustly enriched himself in an amount to be determined, but not less than five hundred thousand dollars ($500,000.00).

216.    Each of the Defendants - Edgar Santiago, Angela Santiago and Bolivar Quinones - is jointly and severally liable to Plaintiff for the value of all of the money which was the unjust enrichment received by him, and a judgment should be issued which requires each defendant to disgorge all of the money he illicitly received and return it to Plaintiff.

### *PRAYER FOR RELIEF*

WHEREFORE, it is respectfully demanded that Plaintiff be awarded judgment against each of the Defendants, jointly and severally, as follows:

a.    **Cause of Action # 1 --** *Breach of Employment Contract – Against Defendant Edgar Santiago*. On this cause of action, Plaintiff is entitled to a judgment against defendant Edgar Santiago which awards compensatory damages to Plaintiff and against said defendant in an amount to be determined, but in any event not less than one million dollars ($1,000,000.00).

b.    **Cause of Action # 2** – *Violation of Duty of Fidelity and Undivided Loyalty to Employer – Against Defendant Edgar Santiago.* On this cause of action, Plaintiff is entitled to a judgment which orders defendant Edgar Santiago to pay Plaintiff damages in an amount to be determined which exceeds one million dollars ($1,000,000.00).

c.    **Cause of Action # 3** – *Breach of Fiduciary Duty - Against Defendant Edgar Santiago.* On this cause of action, Plaintiff is entitled to a judgment which orders defendant Edgar Santiago to pay Plaintiff damages in an amount to be determined which exceeds one million dollars ($1,000,000.00).

d.    **Cause of Action # 4 --** *Faithless Servant Doctrine – Against Defendant Edgar Santiago.* On this cause of action, Plaintiff is entitled to a judgment which orders defendant Edgar

Santiago to disgorge and return to Plaintiff all of the wages and other compensation which he received from Plaintiff during the entire period of time from November 5, 2015 through the final date of his employment, June 2, 2017, and all compensation he may have received from EH USA because of his employment from November 5, 2015 to June 2, 2017.

  e.  **Cause of Action # 5** -- *Conversion – Wrongful Taking – Against Defendants Edgar Santiago and Bolivar Quinones.* On this cause of action, defendant Edgar Santiago and defendant Bolivar Quinones each is jointly and severally liable for the entire value of Plaintiff's property which was the subject of Defendants' conversion, and the liability is in an amount to be determined which exceeds one million dollars ($1,000,000.00) as to each of the Defendants, and a judgment should be awarded in favor of Plaintiff and against each of the Defendants which includes this relief.

  f.  **Cause of Action # 6** -- *Conversion – Wrongful Disposal or Use – Against Defendants Edgar Santiago, Angela Santiago and Bolivar Quinones.* On this cause of action, defendants Edgar Santiago, Angela Santiago and defendant Bolivar Quinones each is jointly and severally liable for the entire value of Plaintiff's property which was the subject of Defendants' conversion, and the liability is in an amount to be determined which exceeds one million dollars ($1,000,000.00) as to each of the Defendants, and a judgment should be awarded in favor of Plaintiff and against each of the Defendants which includes this relief.

  g.  **Cause of Action # 7** -- *Conversion – Wrongful Detention – Against Defendants Edgar Santiago, Angela Santiago and Bolivar Quinones.* On this cause of action, defendants Edgar Santiago, Angela Santiago and defendant Bolivar Quinones each is jointly and severally liable for the entire value of Plaintiff's property which was the subject of Defendants' conversion, and the liability is in an amount to be determined which exceeds one million dollars ($1,000,000.00) as to

each of the Defendants, and a judgment should be awarded in favor of Plaintiff and against each of the Defendants which includes this relief.

h.      **Cause of Action # 8** – Aiding and Abetting a *Conversion – Against Defendant Angela Santiago.* On this cause of action, defendant Angela Santiago is liable for the entire value of Plaintiff's property which was the subject of Defendants' conversion, and the liability is in an amount to be determined which exceeds one million dollars ($1,000,000.00) as to each of the Defendants, and a judgment should be awarded in favor of Plaintiff and against each of the Defendants which includes this relief.

i.      **Cause of Action # 9** -- *Replevin – Against Defendants Edgar Santiago, Angela Santiago and Bolivar Quinones.* The Court should issue and enter an Order which awards a preliminary injunction, pursuant to Fed. R. Civ. P. Rule 65, in favor of Plaintiffs and against each of the Defendants (Edgar Santiago, Angela Santiago and Bolivar), including, but not limited to: (i) ordering each of the Defendants to immediately return to Plaintiff all of the funds owned by Plaintiff which were transmitted by Imbert Corp. to Edgar Santiago and/or to Bolivar in which any of the Defendants - Edgar Santiago, Angela Santiago and Bolivar Quinones - acquired possession in violation of Plaintiff's possessory rights; and (ii) ordering each of the Defendants to immediately return to Plaintiff all of the funds owned by Plaintiff which were transmitted by Hua Nan Commercial Bank to Edgar Santiago and/or to Bolivar in which any of the Defendants - Edgar Santiago, Angela Santiago and Bolivar Quinones - acquired possession in violation of Plaintiff's possessory rights; and (iii) ordering any additional relief in favor of Plaintiff which is appropriate.

j.      **Cause of Action # 10** -- *Unjust Enrichment - Against Defendants Edgar Santiago, Angela Santiago and Bolivar Quinones.* On this cause of action, a judgment which orders each of the Defendants to disgorge a sum of money (i) which is equal to the value of the entirety of the funds owned by Plaintiff which was taken by defendants Edgar Santiago and Bolivar from Plaintiff;

and/or (ii) the value of the funds owned by Plaintiff in which any of the Defendants obtained

possession which violates the possessory rights of Plaintiff, which constitutes the unjust enrichment,

in an amount to be determined, but in any event not less than one million dollars ($1,000,000.00) by

defendant Edgar Santiago and defendant Angela Santiago, and not less than five hundred thousand

dollars ($500,000.00) by defendant Bolivar Quinones, and deliver the sums of money to Plaintiff.

    k.     For each of the causes of action, Plaintiff requests a judgment which awards all

additional and further relief in favor of Plaintiff and against each of the Defendants which the Court

deems to be appropriate under the circumstances.

Dated: New York, New York
       February 22, 2019

                **KUCKER & BRUH, LLP**
                *(Attorneys for Plaintiff)*
                747 Third Avenue, 12th Floor
                New York, New York 10017
                (212) 869-5030

      By:   _____
                William D. Hummell, Esq.
                A Member of the Firm